Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/17/2025 09:11 AM CDT

In re Estate of Rita A. Walker, deceased.
Mark E. Walker, appellant, v.
Michael J. Walker, appellee.

___ N.W.3d ___

Filed October 17, 2025.    No. S-24-680.

1. **Judgments: Appeal and Error.** The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

2. **Guardians and Conservators: Judgments: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Decedents' Estates: Appeal and Error.** An appellate court, in reviewing a probate court judgment for errors appearing on the record, will not substitute its factual findings for those of the probate court where competent evidence supports those findings.

4. **Appeal and Error: Words and Phrases.** In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order.

5. **Courts: Appeal and Error.** When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate.

6. **Judgments: Courts: Appeal and Error.** When the judgment of a trial court is reversed on appeal and the cause remanded without specific instructions, it is the duty of the trial court to exercise its discretion in the further disposition of the case.

7. **Wills: Proof.** A self-proved will establishes prima facie proof of testamentary capacity.

8. **Wills: Words and Phrases.** One possesses testamentary capacity if the testator understands the nature of the testator's act in making a will or codicil thereto, knows the extent and character of the testator's property, knows and understands the proposed disposition of that property, and knows the natural objects of the testator's bounty.

9. **Wills.** Testamentary capacity is tested by the state of the testator's mind at the time the will or codicil is executed.

10. **Wills: Undue Influence.** Undue influence sufficient to defeat a will is manipulation that destroys the testator's free agency and substitutes another's purpose for the testator's.

11. **Wills: Undue Influence: Proof.** To show undue influence, a will contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to, or susceptible to, undue influence; (2) there was an opportunity to exercise such influence; (3) there was a disposition to exercise such influence; and (4) the result was clearly the effect of such influence.

12. **Undue Influence: Proof.** Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition.

13. **Undue Influence.** Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; instead, there must be a solid foundation of established facts on which to rest the inference of its existence.

Appeal from the County Court for Douglas County: Stephanie S. Shearer, Judge. Affirmed.

Lisa M. Line, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellant.

David D. Begley, of Elder Law and Estate Planning of Nebraska, David D. Begley, P.C., L.L.O., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Miller-Lerman, J.
## NATURE OF CASE
In the first appeal of this matter, *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023), we determined that

the ruling of the county court for Douglas County excluding exhibit 7—a purported will signed in 2016—must be reversed, and the matter was remanded for reconsideration on the existing record with the sole addition of exhibit 7. Mark E. Walker now appeals the order of the county court filed after remand in which the court refused to admit for probate a will Mark offered as that of his deceased mother, Rita A. Walker. The court found that Mark failed to meet his burden to show that Rita had testamentary capacity at the time she executed the will, and the court also found that the will was the product of undue influence. The court ordered probate of Rita's estate as an intestate estate and appointed Mark's brother, Michael J. Walker, as personal representative of Rita's estate. We affirm the county court's order.

## STATEMENT OF FACTS

Our statement of facts is based on the original record and the proceedings on remand. Rita died on September 26, 2021. She was survived by four sons—Michael, Richard Walker, Stephen Walker, and Mark. On November 22, Mark filed a petition in the county court in which he sought formal probate of a will dated September 15, 2021, that he purported to be the validly executed last will of Rita. The will offered by Mark named Mark as the sole beneficiary and personal representative of Rita's estate, and it omitted Rita's three other sons. This proceeding gave rise to the first appeal and, eventually, the current appeal after remand.

Michael objected to the probate of the will offered by Mark. He instead petitioned for a formal adjudication of intestacy and nominated himself as personal representative. In opposing the will offered by Mark, Michael alleged that (1) Rita lacked testamentary capacity as of September 15, 2021, which was 11 days prior to her death, and (2) the will was the product of undue influence.

The county court held a bench trial on Mark's petition for probate of the will. The court took evidence both from

Mark as the proponent of the will and from Michael as the opponent of the will. Evidence received at the bench trial included testimony by both Mark and Michael, as well as their brothers, Richard and Stephen; testimony by other witnesses; and various exhibits.

Mark testified in support of the offered will. Mark also presented testimony by Thomas Kaspar, Jr., who was a friend of Mark and had been a friend of Rita and her late husband. Kaspar testified regarding his having notarized the will offered by Mark.

During his testimony, Mark offered into evidence exhibit 7, which was a typed document that Mark purported to be a prior will that had been signed by Rita in February 2016. Exhibit 7 generally provided for the same disposition of the estate as the will that Mark offered for probate and that named Mark as the sole beneficiary and "Independent Executor" of Rita's estate. Michael objected to admission of exhibit 7 based on relevance. The county court sustained Michael's objection based on relevance, and the court added that it found "a hearsay issue with the document." The court therefore refused to admit exhibit 7 into evidence.

Michael testified in opposition to the will. Michael called Richard and Stephen as witnesses, and he recalled Mark to testify. The brothers all generally testified regarding their interactions with Rita and with one another in recent years. Michael also presented testimony by Leslie Royal, a nurse who had treated Rita at a rehabilitation facility a year or two prior to Rita's death. Rita had injured her back in a car accident in which Mark had been driving. Royal testified, inter alia, that one evening, she heard Mark "yelling" at Rita regarding the car accident. Royal testified that Mark told Rita that she would "do what [she was] told" or he would take her out of the rehabilitation facility and she would "just die at home." Royal testified that she was alarmed by the incident and that she reported the incident to the facility's social services department.

When Mark was recalled by Michael, he acknowledged he had a tense discussion with Rita concerning Michael's effort to encourage Rita to pursue a personal injury action related to the car accident. But Mark denied that he had said the specific things that Royal had testified to, and he testified that while he was aware a report had been made to the rehabilitation facility's social services department, no action was taken in response to the incident.

Following the bench trial, on July 12, 2022, the county court entered an order in which it concluded that the will offered by Mark was validly executed, but the court refused to admit the will for probate because it found that (1) Mark failed to meet his burden to prove Rita's testamentary capacity at the time of the will's execution in September 2021 and (2) the will was the product of undue influence. In the order, the court generally reviewed the testimony and evidence admitted at the bench trial. The court noted the following evidence in support of its findings.

Regarding its finding that Mark failed to prove Rita's testamentary capacity, the county court stated that "testimony about capacity from [Mark] was limited" but that the evidence was clear that Rita was on hospice care and that she "was taking pain medication as well as CBD oil, dying from pancreatic cancer, and experiencing pain" when she signed the will and that within 2 days of signing the will, Rita was taken to the hospital "for a serious medical issue." The court noted testimony by Michael that "several days before signing the Will, [Rita] was sleepy and unable to wake up because of pain meds" and that "when talking she would lose her train of thought and get frustrated." The court stated that Mark testified that he had drafted the will from a document he obtained from the internet. The court stated that it "did not hear evidence that [Rita] knew the nature of the acts she was making in the Will, the nature and extent of her property, or proposed disposition of her property."

Regarding its finding that the proposed will was the product of undue influence, the county court stated that it found by a preponderance of the evidence that Rita "was subject to undue influence, Mark . . . had the opportunity to exercise such influence on [Rita], there was a disposition to exercise such influence, and the result was clearly the effect of such influence." In its July 12, 2022, order, the court set forth the following evidence, some of which we have recited above to support these findings:

The undisputed testimony is [Rita] was dying from pancreatic cancer in September 2021. She was suffering from pain, using prescription pain medication and CBD oil, and on hospice care. The Will was executed 11 days before her death. The Will was "written" by [Mark] who admitted he "pulled it down of [sic] the internet." There was no evidence presented that [Rita] had the opportunity to read or understand the contents of the Will. The Will leaves everything to [Mark]. [Mark] signed as a witness as did . . . Kaspar. Kaspar did not question [Rita] about the contents of the Will. The Court found the testimony from Royal to be credible and reliable. Mark threatened [Rita] to do what he told her to, or she would die at home. The Court acknowledges this was a year before the Will was signed, however, the Court finds that evidence relevant to [Mark's] disposition to exercise influence. The evidence shows [Mark] had every opportunity to exercise undue influence. [Rita] lived with [Mark]. Evidence showed [Rita's] other three sons were making multiple visits a week to visit [her]. [Mark] did not have any of them serve as a witness to the execution of the Will. [Mark] called a friend, Kaspar, to notarize the Will. The facts and circumstances of the drafting of the Will, the nature and timing of the execution, the opportunity and disposition to exercise undue influence clearly prove to the Court the Will is a product of undue influence.

The court concluded its order by stating that the will would not be admitted for probate. The court ordered probate to proceed as an intestate proceeding, and the court appointed Michael to be personal representative of the estate.

Mark filed a motion for new trial or, in the alternative, to alter or amend the order. Mark argued, inter alia, that the court erred when it refused to admit exhibit 7 into evidence. After a hearing, the county court overruled the motion and specifically rejected Mark's argument regarding exhibit 7. The court stated that exhibit 7 did not meet the statutory requirements of a valid will and that its admission would not assist the court in determining the issues in this case.

Mark appealed the county court's July 12, 2022, order to this court. See *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). On appeal, Mark challenged the county court's finding that the will he offered was void due to undue influence, and he challenged the court's order for the case to proceed in intestacy with Michael as personal representative. Mark also challenged the court's refusal to admit exhibit 7 into evidence, and he assigned error to the court's determinations that exhibit 7 was inadmissible hearsay and that exhibit 7 was not relevant and, therefore, was inadmissible.

On appeal, we began our analysis by focusing on Mark's assignments of error regarding the admissibility of exhibit 7. We prefaced our analysis of the exhibit 7 issues by stating:

> The questions regarding exhibit 7 revolve around a proposition long stated in our cases. A prior will, executed when the testator's testamentary or mental capacity was and is unquestioned, and as to which the existence of undue influence is not charged, and which conforms substantially as to the results produced to the instrument contested, may be considered as competent evidence for the purpose of refuting charges of undue influence or want of testamentary or mental capacity by showing that the testator had a constant and abiding scheme for the distribution of his or her property.

*In re Estate of Walker*, 315 Neb. at 515, 997 N.W.2d at 601. We first addressed the county court's stated concern about the "hearsay issue." We determined that Mark's stated purpose in offering exhibit 7 was to show Rita's "'intent'" and "'mindset,'" which we determined fit squarely within the hearsay exception for a statement of a declarant's then-existing state of mind. *Id*. at 519, 997 N.W.2d at 603. We concluded that the county court erred when it determined that exhibit 7 was inadmissible hearsay.

We then addressed the county court's decision to sustain Michael's objection to exhibit 7 based on relevance. We referenced the proposition and precedent set forth above to the effect that a prior will may be considered competent evidence for the purpose of refuting charges of undue influence or want of capacity by showing a constant and abiding scheme. We acknowledged Michael's argument that exhibit 7 was not a duly executed will and, therefore, was not relevant under our precedent. However, we rejected this argument and held that "competent evidence of a testator's constant and abiding scheme for the distribution of his or her property is not limited to prior duly executed wills." *Id*. at 522, 997 N.W.2d at 605. We concluded that exhibit 7 was relevant for this precise purpose and therefore was admissible.

Having concluded that exhibit 7 was admissible, we considered whether the county court's exclusion of exhibit 7 was harmless error. We noted that in its order overruling Mark's motion for new trial or to alter or amend its previous order, the county court stated that any error in refusing to admit exhibit 7 was harmless because exhibit 7 did not meet the statutory requirements of a valid will and did not assist the court in determining the issues in this case. We stated that the county court's language indicated that it believed that exhibit 7 could not be considered as competent evidence based on the court's implicit determination that it was not a duly executed will and therefore was irrelevant. We further determined that the court's language did not demonstrate that it ever considered

the weight of exhibit 7. We reasoned that because exhibit 7 was relevant and admissible, the county court was required to determine the weight of exhibit 7 as evidence to establish testamentary capacity and to rebut claims of undue influence. We concluded that the exclusion of exhibit 7 unfairly prejudiced Mark's substantial rights.

Because we determined that the county court's evidentiary ruling must be reversed and the cause remanded, we did not consider Mark's remaining assignments of error. We stated that we "express no opinion regarding the weight, if any, that should be given on remand to exhibit 7 regarding testamentary capacity and undue influence." *Id*. at 526, 997 N.W.2d at 607. In our conclusion, we reversed the county court's order refusing to admit the will offered by Mark into probate, and we remanded the cause to the county court with directions "to reconsider the existing record, including exhibit 7, to determine whether [Mark] met his burden of proving testamentary capacity and whether [Michael] met his burden of proving undue influence." *Id*.

On remand, the county court held a hearing pursuant to our mandate in which it stated that, in compliance with our instructions, it received exhibit 7 into evidence. At the hearing, Mark requested that the court allow testimony by an additional witness, Mary Williamette Preston, who was Rita's sister. The county court refused to allow testimony by Preston. The court stated that this court's direction was clear that the county court was to admit exhibit 7 and to consider it with the existing record. The court reasoned that it was not permissible under our mandate to admit new evidence, including Preston's testimony. The court allowed Mark to make an offer of proof regarding Preston's testimony, and at a later hearing, the court received an affidavit of Preston as an offer of proof. In the affidavit, Preston generally stated that she had been close with Rita, that she knew that Mark had taken care of Rita in her final years, and that Rita had told her more than once that she intended for Mark to receive her

estate and to "'get everything.'" Preston also generally stated in the affidavit that Rita made all her own decisions up until her death and that in her final weeks, Rita was able to make decisions and was "clear in the head."

The county court entered an order on August 15, 2024, in which it again determined that the will that Mark offered should not be admitted for probate. In its order, the county court generally repeated the recounting of evidence from the bench trial that it had set forth in its July 12, 2022, order.

The county court found in the August 2024 order that Mark failed to meet his burden regarding Rita's capacity "even when considering the contents of Exhibit 7." The court conceded that the exhibit showed a constant and abiding scheme for the distribution of Rita's estate and that the document was signed by Rita and was notarized. The court found that exhibit 7 reflected Rita's state of mind in 2016. However, the court stated exhibit 7 was not the will being contested in this matter and evidence regarding Rita's capacity in 2016 was limited. The court turned its focus to evidence of Rita's capacity when she signed the will in September 2021, and the court repeated the evidence relevant to Rita's capacity that it had set forth in the July 12, 2022, order. The court concluded its analysis of capacity by again acknowledging that exhibit 7 showed a constant and abiding scheme for distribution of Rita's estate, but the court stated that "given the facts and circumstances specific to the signing of the Will on September 15, 2021," it gave exhibit 7 "little or no weight in making its decision."

The court then addressed the issue of undue influence. The court again found by a preponderance of the evidence that Rita was subject to undue influence, that Mark had the opportunity to exercise such influence on Rita, that there was a disposition to exercise such influence, and that the result was clearly the effect of such influence. The court repeated much the same evidence in support of these findings that it had set forth in its July 12, 2022, order.

The court stated in conclusion that it gave "little or no weight to Exhibit 7 when determining if [Rita] had capacity on September 15, 2021, and if the Will signed on September 15, 2021, was the product of undue influence." The court also stated that it would not consider the Preston affidavit because it was outside of "'the existing record.'" The court ordered that the will would not be admitted for probate and that the case would proceed in intestacy, and it appointed Michael as personal representative.

Mark appeals the county court's August 15, 2024, order.

## ASSIGNMENTS OF ERROR

Mark claims generally that the county court erred when it ordered the probate of Rita's estate to proceed in intestacy with Michael as personal representative. He specifically claims that the county court erred (1) when it failed to consider the Preston affidavit or to allow Preston to testify, (2) when it concluded that the will he offered for probate was void due to failure of testamentary capacity, and (3) when it concluded that the will was the product of undue influence.

## STANDARDS OF REVIEW

[1] The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *In re Masek Family Trust*, 318 Neb. 268, 15 N.W.3d 379 (2025).

[2,3] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. An appellate court, in reviewing a probate court judgment for errors appearing on the record, will not

substitute its factual findings for those of the probate court where competent evidence supports those findings. *Id*.

## ANALYSIS

*County Court Properly Excluded Preston's Testimony.*

Mark first claims that the county court erred when it failed to consider the Preston affidavit or to allow Preston to testify. We agree with the county court's determination that admitting new evidence, including Preston's testimony, was outside the scope of our mandate on remand, and we therefore conclude that the county court did not err in this respect.

[4-6] In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. *In re Masek Family Trust, supra*. When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate. *Id*. When the judgment of a trial court is reversed on appeal and the cause remanded without specific instructions, it is the duty of the trial court to exercise its discretion in the further disposition of the case. *Id*.

In *In re Estate of Walker, supra*, we determined that the county court's evidentiary ruling excluding exhibit 7 must be reversed and that the cause must be remanded based on that reversal. We did not consider Mark's remaining assignments of error regarding the propriety of the county court's rulings that the will offered by Mark was not to be admitted and that the probate of Rita's estate should proceed in intestacy with Michael as personal representative. We "express[ed] no opinion regarding the weight, if any, that should be given on remand to exhibit 7 regarding testamentary capacity and undue influence." *Id*. at 526, 997 N.W.2d at 607. In our conclusion, we remanded the cause to the county court with directions "to reconsider the existing record, including exhibit 7, to determine whether [Mark] met his burden of proving

testamentary capacity and whether [Michael] met his burden of proving undue influence." *Id*.

In ordering remand to the county court, we did not mandate a specific weight to be given to exhibit 7 or a specific judgment to be entered. Instead, it was left to the county court to make those determinations. However, we gave the specific instruction that in making those determinations, the county court was to "reconsider the existing record, including exhibit 7." *Id*. This instruction required the county court to consider only the evidence that was already in the existing record, with the sole exception being the addition of exhibit 7 as evidence to be considered.

Because the county court was given specific instruction on remand, it was required to comply with the specific instruction, and it had no discretion to deviate from the mandate by admitting any additional evidence other than exhibit 7. We therefore conclude that the county court did not err when it did not allow Preston to testify and when it did not admit the Preston affidavit as evidence to be considered when it made its determinations and orders. We reject this assignment of error.

*County Court Did Not Err in Its Determinations*
*Regarding Testamentary Capacity*
*and Undue Influence.*

Mark further claims that the county court erred when it concluded that the will he offered for probate was void due to failure of testamentary capacity and due to undue influence and when it therefore ordered the probate of Rita's estate to proceed in intestacy with Michael as personal representative. Mark's argument focuses on the county court's finding that he did not meet his burden to prove Rita's testamentary capacity and the county court's finding that the will was the product of undue influence. Based on our review of the record, we find no error on the record relating to these findings.

Regarding the issues of testamentary capacity and undue influence in a contested case, Neb. Rev. Stat. § 30-2431 (Reissue 2016) provides in part:

> Proponents of a will have the burden of establishing prima facie proof of due execution, death, testamentary capacity, and venue. Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

In this case, Mark, as the proponent of the will, had the burden of establishing prima facie proof of Rita's testamentary capacity, while Michael, as a contestant of the will, had the burden of establishing undue influence. Each had the ultimate burden of persuasion as to the respective issues.

The county court concluded that Mark did not meet his burden to show that Rita had testamentary capacity when she signed the will on September 15, 2021, and it concluded that Michael showed by a preponderance of the evidence that Rita was subject to undue influence. We review these conclusions for error on the record, see *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023), and in that regard, we determine that both conclusions conform to the law because the county court applied the correct standards of law as set forth below. We further determine that neither conclusion was arbitrary, capricious, or unreasonable.

In addition, we must determine whether the county court's findings regarding testamentary capacity and undue influence are supported by competent evidence. As we stated in *In re Estate of Walker*, "[O]ur standard of review gives considerable deference to the county court's factual findings." 315 Neb. at 525, 997 N.W.2d at 606. In reviewing the county court's judgment in this probate matter for errors appearing on the record, we will not substitute our factual findings for those of the county court where competent evidence supports the county court's findings. See *In re Estate of Walker, supra*.

*Testamentary Capacity.*

[7] We first review standards of law regarding testamentary capacity and then consider whether competent evidence supported the county court's finding regarding testamentary capacity. While a self-proved will establishes prima facie proof of testamentary capacity, *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994), the county court in this case found that the will offered by Mark was not self-proved because it did not meet statutory requirements set forth in Neb. Rev. Stat. § 30-2329 (Reissue 2016). Mark does not challenge the county court's finding that the will was not self-proved. Instead, he contends that he provided a prima facie case of testamentary capacity and that Michael failed to present evidence that Rita lacked testamentary capacity.

[8,9] One possesses testamentary capacity if the testator understands the nature of the testator's act in making a will or codicil thereto, knows the extent and character of the testator's property, knows and understands the proposed disposition of that property, and knows the natural objects of the testator's bounty. See *In re Estate of Peterson*, 232 Neb. 105, 439 N.W.2d 516 (1989). Testamentary capacity is tested by the state of the testator's mind at the time the will or codicil is executed. *Id*.

Considering testamentary capacity, the county court noted evidence that on September 15, 2021, Rita was dying from pancreatic cancer, was experiencing pain, and was taking pain medication, and that she was taken to the hospital with a serious medical issue 2 days later. The court also noted testimony by Michael that in the days before signing the will, Rita was "sleepy and unable to wake up because of pain meds" and "when talking she would lose her train of thought and get frustrated." But more germane to its conclusion that Mark failed to prove Rita's testamentary capacity, the court characterized Mark's evidence as "limited" and stated that he had not provided "evidence that [Rita] knew the nature of the acts

she was making in the Will[,] the nature and extent of her property, or proposed disposition of her property."

In arguing that he provided a prima facie case of testamentary capacity, Mark mainly relies on his own testimony that Rita was making her own decisions and directing her own affairs, that the specific medication she was taking allowed her to remain clear, and that she continued to socialize with family and neighbors. Mark also cites testimony by Kaspar that Rita appeared to sign the will voluntarily, that she read the will before she signed it, and that she did not appear to be confused. Mark also notes the similarity in the dispositional terms of exhibit 7 to the will he offered for probate.

We determine that competent evidence supports the county court's finding that Mark did not show that Rita had testamentary capacity on September 15, 2021. Because the will was not self-proved, Mark needed to present other evidence to provide a prima facie case of testamentary capacity. As noted above, Mark cites evidence regarding Rita's general capacity to make decisions and think clearly. However, the county court properly focused on the factors specific to testamentary capacity, such as understanding the nature of Rita's act in making a will, knowing the extent and character of her property, and knowing and understanding the proposed disposition of her property, and the court found that Mark did not provide sufficient evidence of those specific factors.

On the other hand, the court noted evidence provided by Michael regarding Rita's physical and mental state at the time the will was executed. Whether such evidence would have been sufficient to overcome a prima facie case of testamentary capacity if Mark had made such a showing, Michael's evidence provided context and was relevant to the county court's determination regarding Rita's testamentary capacity. Addressing exhibit 7, the county court acknowledged that it was evidence of a constant and abiding scheme for distribution of Rita's property, but the court focused on the evidence regarding Rita's testamentary capacity in 2021 and did not find evidence

of Rita's signing of a document in 2016 to be controlling as to her capacity in 2021. Whether we would have given more weight to exhibit 7 or would have made different findings regarding testamentary capacity, we cannot say that there was not competent evidence to support the county court's finding that Rita lacked testamentary capacity.

*Undue Influence.*

[10,11] We next review standards of law regarding undue influence and then consider whether competent evidence supported the county court's finding that the will was the product of undue influence. Undue influence sufficient to defeat a will is manipulation that destroys the testator's free agency and substitutes another's purpose for the testator's. *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022). To show undue influence, a will contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to, or susceptible to, undue influence; (2) there was an opportunity to exercise such influence; (3) there was a disposition to exercise such influence; and (4) the result was clearly the effect of such influence. *Id*.

[12,13] Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition. *Id*. Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; instead, there must be a solid foundation of established facts on which to rest the inference of its existence. *Id*.

Considering undue influence, the county court noted evidence of Rita's physical and mental condition on September 15, 2021, the date the will was signed, which was 11 days prior to her death, as well as evidence that Mark prepared the will and signed it as a witness. Although the court acknowledged that Kaspar notarized the will and witnessed Rita's reading and signing the will, it noted that Kaspar did not question Rita regarding the contents of the will. The court

further noted evidence that although Rita's other sons made multiple visits to Rita around the time the will was signed, Mark did not have any of the other sons serve as a witness to the execution of the will. The court found credible the testimony of Royal to the effect that Mark had threatened Rita to do what he told her. The court stated that it considered exhibit 7 but gave little or no weight to the exhibit when determining whether the will was the product of undue influence. Based on the evidence of facts and circumstances surrounding the drafting and execution of the will, the court found that Rita was subject to undue influence, that Mark had the opportunity to exercise such influence on Rita, that Mark had the disposition to exercise such influence, and that the result was clearly the effect of such influence.

On appeal, Mark contends that Michael did not meet his burden to establish undue influence. Mark argues that although the evidence might show he had an opportunity to exert undue influence, there was no evidence to show that he was disposed to exert undue influence or that the will was clearly the result of undue influence. Mark also argues that the county court inappropriately shifted the burden to him to disprove undue influence, and he references in his appellate brief the portion of the county court's order that states "The Court, even considering exhibit 7, is not satisfied the Will was not the result of undue influence." Mark further argues that the county court abused its discretion when it afforded exhibit 7 little to no weight, despite acknowledging that it showed a constant and abiding scheme for the distribution of Rita's property.

We determine that competent evidence supports the county court's finding that Michael established undue influence. Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition. *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022). Based on evidence concerning Rita's condition and Mark's relationship with Rita at the time

the will was signed, the county court could reasonably infer that Rita was subject to undue influence and that Mark had an opportunity to exercise such influence. Regarding whether Mark had a disposition to exercise such influence, in addition to the evidence of Rita's condition and Mark's relationship at the time Rita signed the will, the county court noted Royal's testimony that Mark had threatened Rita. The court stated that it found Royal's testimony to be credible and reliable, and it specifically stated that although the testimony involved an incident that occurred a year before the will was signed, the evidence was relevant to Mark's disposition to exercise influence. The county court also noted facts and circumstances surrounding the signing of the will, including that Mark did not have any of Rita's other sons serve as a witness to the execution of the will, in order to support its finding that the will was the product of undue influence. In this regard, we note that as the fact finder, it was the county court's role to determine the credibility of Royal and the other witnesses, including Mark and Michael. The court observed Mark as a witness, and the court's determination of Mark's credibility appears to have factored into its finding of undue influence.

Contrary to Mark's assertion, we do not read the county court's order as shifting the burden to Mark to disprove undue influence. Despite the isolated sentence highlighted by Mark in his appellate brief, the county court was clear in its order that as the party contesting the will, Michael had the burden of proof and the ultimate burden of persuasion regarding undue influence. We also reject Mark's argument that the county court abused its discretion when it gave little or no weight to exhibit 7. As the fact finder, the county court was to determine the weight to give to evidence, and the court emphasized that in considering both testamentary capacity and undue influence, its focus was on September 15, 2021, when Rita signed the will. Whether we would have given more weight to exhibit 7 or would have made a different finding regarding undue influence, we cannot say that there was not competent

evidence to support the county court's finding that the will was the product of undue influence.

## CONCLUSION

We conclude that the county court did not err when it did not allow Preston to testify and when it did not consider the Preston affidavit as evidence relevant to testamentary capacity or undue influence. In our review of the county court's determinations that Rita lacked testamentary capacity and that the will was the product of undue influence for error on the record, we conclude that such determinations conformed to the law, were supported by competent evidence, and were neither arbitrary, capricious, nor unreasonable. We therefore affirm the county court's order.

Affirmed.